**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

FUSION OIL COMPANY, NEW MILLENNIUM,
INC. and HASSAN HARAJLI,

    Plaintiffs,

v.                                                                                    Case No. 04-CV-73395-DT

                                                                                HONORABLE DENISE PAGE HOOD

CRESCENT PETROLEUM, INC. and
MOHAMMED EL-BATHY,

    Defendants.
_____/

**MEMORANDUM OPINION AND ORDER
AND
NOTICE OF STATUS CONFERENCE**

**I.     BACKGROUND/FACTS**

On August 31, 2004, Plaintiffs Fusion Oil Company ("Fusion"), New Millennium, Inc. ("New Millennium"), and Hassan Harajli filed the instant Complaint against Defendants Crescent Petroleum, Inc. ("Crescent") and Mohammed El-Bathy alleging: 1) declaratory judgment under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 (Count I); and 2) breach of contract (Count II). On September 20, 2004, Defendants filed a Counterclaim against Plaintiffs which has twice been amended. The Second Amended Counterclaim alleges: Breach of Motor Fuel Supply & Marketing Agreement (Count I); Breach of Land Contract and Specific Performance (Count II); and, Violation of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801

*et seq.* (Count III).[1] On September 20, 2004, Defendants filed a Third Party Complaint against Comerica Bank. The Third Party Complaint was dismissed on January 28, 2005 upon stipulation by the parties.

The parties entered into various agreements involving a fuel station located at 30861 John R. Road in Madison Heights, Michigan. On January 23, 2004, Plaintiff Fusion, Defendant Crescent, and Defendant El-Bathy entered into a Motor Fuel Supply & Marketing Agreement for a term of 20 years. The Agreement required Defendants to: 1) purchase a minimum of 110,000 gallons of fuel per month for the fuel station; 2) use good faith and best efforts to maximize the sale of Fusion's brand of fuel; 3) purchase directly from Fusion no less than 100% of the monthly and contract year quantities Defendants are able to sell; 4) pay Fusion within 48 hours after delivery; and 5) exercise sound business practices in managing the Agreement. Defendant El-Bathy executed a Personal Guaranty of $50,000 to secure payment of the purchase of Fusion's fuel.

Plaintiffs New Millennium and Harajli also entered into a Land Contract with Defendants Crescent and El-Bathy. Pursuant to the Land Contract, Plaintiffs agreed to sell and convey the fuel station to Defendants. In addition, the Land Contract provided for the following agreements between Plaintiffs and Defendants to be cross-collateralized: Land Contract, Line of Credit Agreement, Personal Guarantee, Motor Fuel Supply & Marketing Agreement, Demand Promissory Note, and Agreement to Cross Collateralize (collectively the "Franchise Agreement"). The Land Contract also provided that a default upon any one agreement automatically constituted a default on all other agreements between the parties.

---

[1] Defendants admit that Plaintiff New Millennium has cured the breach alleged in Count II (Breach of Land Contract and Specific Performance) of the Counterclaim. Count II of the Counterclaim is dismissed.

Prior to 2003, Defendant Crescent operated a Sunoco gas station as a tenant for approximately three years with Sunoco, Inc. (El-Bathy Aff., ¶ 2) In 2003, Sunoco developed a strategy to sell off its real estate holdings in Michigan by offering the property at substantial discounts to tenants operating its stations. Defendant Crescent and Sunoco entered into a Purchase Agreement (Sunoco Agreement) for the station on John R. Defendant Crescent, however, could not secure financing by the September 8, 2003 deadline.

Plaintiffs approached Defendant Crescent with an offer that Plaintiff Fusion supply motor fuel to Defendant Crescent and Plaintiff Fusion would accept the assignment of the Sunoco Agreement from Defendant Crescent to purchase the property. The parties eventually agreed to a Land Contract Agreement which allowed Defendants to purchase the property as land contract vendees from Plaintiffs, along with the 20-year Motor Fuel Supply & Marketing Agreement requiring Plaintiff Fusion to deliver Sunoco brand fuel to Defendants. The Agreements between Plaintiffs and Defendants were signed on January 23, 2004. On January 27, 2004, Plaintiffs held a closing with Sunoco for the purchase of the property based on the Assignment of the Agreement of Sale from Defendants to Plaintiffs.

On March 1, 2004, Plaintiff Harajli sent Defendant El-Bathy a letter notifying him that Defendant Crescent had violated the Motor Fuel Supply & Marketing Agreement. On August 26, 2004, Plaintiff Harajli served Defendants with a Termination of Franchise Relationship and Land Contract letter. Plaintiffs subsequently filed the instant action against Defendants on August 31, 2004, along with an Emergency Motion for Judgment of Possession, Motion for Temporary Restraining Order and Motion for Preliminary Injunction. The Court denied the motions in an Order dated September 15, 2004. Plaintiffs again filed a Motion for Preliminary Injunction and Motion

3

for Judgment, which the Court denied in an Order dated December 15, 2004.

This matter is before the Court on various dispositive motions filed by the parties. Responses have been filed and a hearing held on the matter.

## II.   ANALYSIS

### A.   Summary Judgment Standard of Review

Rule 56(c) of the Rules of Civil Procedure provides that summary judgment should be entered only where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*,

477 U.S. at 322-23.  A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

      **B.**      **Defendants/Counter-Plaintiffs' Motion for Summary Judgment and Motion to Compel Plaintiff to Deliver Deed to Property to Defendants**

Defendants' motion seeks summary judgment on the claim that Plaintiff New Millennium breached the Land Contract when it refused to deliver the Deed. Defendants claim that they are ready, willing and able to tender to Plaintiff New Millennium, the entire principal balance and accrued interest due under the Land Contract but that Plaintiff New Millennium refused to deliver the Deed. Defendants seek specific performance by Plaintiff New Millennium to deliver the Deed pursuant to the terms of the Land Contract.

In response, Plaintiffs argue that Defendants/Counter-Plaintiffs' Counterclaim does not allege an action to enforce a contract for purchase of real estate under the Land Contract between the parties nor have they pled an action for specific performance for Plaintiffs/Counter-Defendants to deliver the Deed to Defendants/Counter-Plaintiffs.

The Counterclaim, as admitted by Defendants/Counter-Plaintiffs, does not allege a breach of contract action for purchase of real estate under the Land Contract nor does it allege an action for specific performance to deliver the Deed to Defendants/Counter-Plaintiffs. (*See,* Br. in Support of Motion, p. 5.) The Court denies the instant Motion for Summary Judgment and Motion to Compel Plaintiff to Deliver Deed to Property to Defendant without prejudice. The Court considers the instant motion as a Motion to Amend the Complaint to add a Breach of the Land Contract claim and for specific performance to deliver the Deed. Rule 15(a) of the Rules of Civil Procedures provides that "leave shall be freely given when justice so requires" when a party seeks to amend a party's pleading. Fed. R. Civ. P. 15(a). The Court will allow Defendants/Counter-Plaintiffs to amend the Counterclaim within fourteen (14) days from the entry of this Order.

      **C.**      **Plaintiffs' Motion for Summary Judgment on their Complaint and Plaintiffs'**

6

**Motion for Summary Judgment on the Counterclaim**

Plaintiffs seek summary judgment on their Complaint against Defendants for a declaration that Defendants breached the Motor Fuel Supply & Marketing Agreement and Land Contract between the parties and that Defendants are entitled to recover possession of the Leased Marketing Premises. Plaintiffs claim Defendants breached the Agreements as follows:

1. Failing to provide proof of insurance, including the actual policy, which is required under ¶ 2(d) of the Land Contract;

2. Failing to pay taxes before any penalty for non payment of taxes thereto;

3. Failing to make any Land Contract payments since August, 2004;

4. Violating § 3(e) of the Land Contract, which declares that the Fuel Supply Agreement and Personal Guaranty are cross collateralized with the Land Contract such that, "a default upon any one automatically constitutes a default on all other agreements entered into between the parties;

5. Failing to purchase a minimum 110,000 gallons per month, in violation of Article I, Section 1 of the Fuel Supply Agreement;

6. Failing to use good faith and best efforts to maximize the sale of Fusion's motor fuel and failing to purchase 100% of its monthly and contract year quantities it is able to sell from Plaintiff, in violation of Article II, paragraph 1 of the Motor Fuel Supply Agreement;

7. Failing to permit electronic settlement drafts and/or to pay by certified check or bank check within forty eight (48) hours of delivery in violation of Article II, paragraph 3 of the Fuel Supply Agreement;

8. Failing to exercise sound business practices in managing the franchise and to use good faith and best efforts to maximize the Fusion supplied motor fuel at the marketing premises, by act or omission, which detracts from the sale of Fusion

7

        supplied brand of motor fuels at the marketing premises in violation of Article IV, paragraph 1 of the Fuel Supply Agreement;

9. Failing to maintain current, complete and accurate business inventory, purchases and operation of records, in violation of Article IV, paragraph 2(A) of the Fuel Supply Marketing Agreement;

10. Failing to display the Supplier's name, markings and colors to conform with Suppliers graphic standards in violation of Article V, paragraph 2(B) of the Fuel Supply Marketing Agreement;

11. Failing to use the signs, trademarks, service marks and brand names designated by Fusion (i.e., Sunoco), to identify and advertise fuel products, and using signs, trademarks, service marks and brand names for the marketing of Citgo fuel, in violation of Article IX, paragraph 1 of the Fuel Supply Agreement;

12. Utilizing and dispensing from storage facilities owned by Fusion for the storage and sale of other than Fusion supplied products, in violation of Article II, paragraph 7 of the Fuel Supply Agreement;

13. Failing to maintain the leased marketing premises as a Sunoco branded station for the remainder of the twenty (20) year Fuel Supply Agreement, in violation of Article I, paragraph 5 of the Fuel Supply Agreement;

14. Re-branding the station and purchasing fuel from a Citgo jobber, in clear violation of the letter and spirit of the Fuel Supply Agreement and Land Contract.

(Plaintiffs' Br. (Docket No. 58), pp. 12-13) Plaintiffs further argue that because of Defendants' breaches, Plaintiffs are entitled to liquidated damages as set forth in Article XI of the Motor Fuel Supply & Marketing Agreement.

     As to Defendants' Counterclaim, Plaintiffs argue that because Defendants were the first ones to breach the contract, they cannot maintain an action against the other contracting party for failure

to perform, citing *Chrysler Int'l Corp. v. Cherokee Export Co.,* 134 F.3d 738 (6th Cir. 1998). Plaintiffs claim that Defendants bounced the first four drafts for fuel deliveries, in the amount of $60,000.00 from the inception of the relationship and failed to order 110,000 gallons of fuel per month, in violation of the Agreements. Plaintiffs further claim that regardless of these breaches, in August 2004, Defendants substantially breached the Agreement by ordering only 9,000 gallons of fuel on August 8, 2004 and rebranded the station from Sunoco to Citgo. Defendants' claim that these breaches are enumerated grounds for immediate termination under the PMPA, 15 U.S.C. § 2802(c)(8), (9) and (10).

Plaintiffs claim these breaches are substantial under Article XII of the Motor Fuel Supply & Marketing Agreement. Plaintiffs claim that the PMPA specifically provides that the franchisor may, if permitted to do so by the franchise agreement, repossess leased marketing premises, such as the station here and, in circumstances under which it would be reasonable to do so, operate such premises through its employees or agents, citing 15 U.S.C. § 2804(b)(1)(B)(ii). Plaintiffs argue that the Land Contract between the parties specifically permits Plaintiffs to reenter the premises upon its termination. (Land Contract, § 3(g)).

In response, Defendants argue that Plaintiffs have unclean hands, therefore, Plaintiffs are not entitled to the equitable relief of a declaratory judgment. Defendants claims that "he who comes into equity must come with clean hands" but if one comes into the court of equity with unclean hands, this maxim "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior" of the opposing party, citing *Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co.,* 324 U.S. 806, 814 (1945).

9

Taking the facts in light most favorable to Defendants, the non-moving parties, Defendants claim that they have submitted sufficient evidence to show that Plaintiffs breached the Agreements by overcharging on the gasoline distribution and failing to deliver the gasoline when ordered. Defendants claim that Plaintiffs have engaged in every concerted effort to attempt to divest Defendants of their ownership interest in the property. Defendants claim that the motive was money shown by the fact that Sunoco had offered the property to Defendants for $700,000 but that Plaintiff Harajli knew that the property was worth over a million dollars. (Harajli Dep., p. 28) Defendants state that Plaintiff Harajli initially refused to provide Defendant Crescent any interest in the property and that the first draft of the Land Contract assigned outright the entire property to Plaintiff New Millennium. (El-Bathy Dep., pp. 192-98) Defendants addressed each alleged breach in their brief, which the Court notes below.

As to the failure to provide proof of insurance, Defendants claim Plaintiffs were furnished a Proof of Insurance at the time they closed on the property with Sunoco and, again with a March 31, 2004 letter sent by Defendant Crescent Petroleum. (Exs. E and R, Plaintiffs' Response to Plaintiffs' Motion for Summary Judgment on the Complaint) Exhibit S to Defendants' response is the actual Proof of Insurance indicating that the property was insured at the time in question.

Defendants claim that contrary to Plaintiffs' assertion, all taxes have been paid, as shown on Exhibit E to Defendants' Response to Plaintiffs' Motion for Summary Judgment on the Complaint. At Defendant El-Bathy's deposition, there was a recent outstanding tax amount of approximately $4,181.47, which has now been paid by Defendants. (El-Bathy Aff., ¶ 13)This Court's review of Plaintiffs' citation to Defendant El-Bathy's deposition at pp. 102-105 to support their claim that the taxes were not paid does not show a discussion about taxes.

Regarding Plaintiffs' claim that Defendants has failed to make payments under the Land Contract since August 2004, Defendants note that the payments are being held in escrow. Additionally, Defendants claim that they have offered to remit the entire balance of the escrow payments and pay off the Land Contract, an offer which Plaintiffs have ignored and/or refused. (Ex. 1 of Defendants' Motion for Summary Judgment and Motion to Compel Plaintiffs to Deliver Deed to Property to Defendants)

Addressing Plaintiffs' assertion that Defendants failed to purchase a minimum of 110,000 gallons per month and Defendants' failure to use good faith and best efforts to maximize the sale of Plaintiffs' motor fuel, Defendants claim that they always ordered 13,000 gallons but that it was Plaintiff Fusion who delivered less than 13,000 gallons. (El-Bathy Dep., pp. 65, 88-93) Defendants state that Plaintiffs breached the Agreements by failing to deliver gasoline as ordered within 24 hours, as required by the Motor Fuel Supply & Marketing Agreement, ¶ 6.  Failure to deliver the fuel by Plaintiff Fusion caused Defendants to close down the station.  (El-Bathy Aff., ¶¶ 9-10) Defendants claim that all the communication with Plaintiff Fusion was mostly verbal because they were trying to have "some sort of informal relationship like try to be friends."  (El-Bathy Dep., p. 60)  Defendants claim all of this was an effort to prohibit Defendants from meeting their contractually minimum purchase requirement of gasoline in the amount of 110,000 gallons per month.

Regarding Plaintiffs' allegation that Defendants failed to permit electronic settlement drafts and/or to pay by certified check or bank check within forty-eight hours of delivery, Defendants claim that Plaintiff Fusion mandated that Defendants deliver each check personally to the Flat Rock plant. (El-Bathy Aff., ¶ 11)  Defendants further claim that when Plaintiff Fusion took over the

11

distribution of the fuel, the credit card sales were going to another jobber for the month of February 2004 because of Defendants' previous agreement with Sunoco. Sunoco rectified the situation and Plaintiff Fusion was given credit by Sunoco, which Defendants claim Plaintiff Fusion refused to acknowledge. (Exhibit P, Defendants' Response to Plaintiffs' Motion for Summary Judgment on the Complaint; El-Bath Dep., pp. 97-101) Additionally, Defendants claim that Plaintiffs frequently attempted to withdraw more than the $6,000 per month agreed upon by the party, which meant that those attempted withdrawals would bounce. (Ex. 2, Defendants' Response to Plaintiffs' Motion for Summary Judgment on the Complaint; El-Bathy Aff., ¶ 14)

Defendants claim that as to Plaintiffs' allegation that they failed to exercise sound business practices in managing the franchise and failed to use good faith and best efforts to maximize Plaintiff Fusion's supplied motor fuel, they reiterate that based on the above-stated reasons, Plaintiffs were the ones who impeded Defendants' ability to operate the premises efficiently by failing to provide the requested amount of fuel. Defendants claim that since its current agreement with Citgo, Defendant Crescent now averages at least 120,000 gallons of fuel per month, far exceeding what was required under their agreement with Plaintiffs. (El-Bathy Aff., ¶ 12)

Defendants argue that Plaintiffs' claim that Defendants failed to maintain current, complete and accurate business inventory and other records is without merit. The Court notes that Plaintiffs do not support this claim in their brief with any facts.

Defendants claim that Plaintiffs' allegations that they: failed to use the signs, trademarks, service marks and brands designated by Plaintiffs (i.e. Sunoco); failed to utilize and dispense from storage facilities owned by Plaintiff Fusion; failed to maintain the leased marketing premises as Sunoco; and rebranding the station and purchasing fuel from a Citgo jobber are misleading.

Defendants argue that it was Plaintiffs who terminated the Agreement by letter dated August 26, 2004. Defendants argue that in order to mitigate the damages, Defendants had to seek fuel elsewhere. Defendants admit that they have entered into an agreement with Citgo to supply them with fuel after Plaintiffs' termination of the Agreement and the station is operating with a profit. (El-Bathy Aff., ¶ 12) Defendants submitted an opinion issued by the Michigan Court of Appeals where the court affirmed the Oakland County Circuit Court's finding that Defendants' current supplier, Barrick Enterprises, Inc., did not interfere with Plaintiffs' relationship with Defendants. *New Millennium, Inc. v. Barrick Enterprises, Inc.,* Case No. 260085 (Mich. Ct. of App. July 5, 2005 Unpublished Decision). Plaintiffs in this case, filed an action in State Court alleging that Barrick Enterprises tortiously interfered with a contract or business relationship Plaintiffs had with Defendants. Both the Oakland County Circuit Court and the Michigan Court of Appeals found that the contact between Crescent and Barrick occurred after the end of the valid business relationship between Crescent and Plaintiffs. The courts found that Plaintiffs failed to show either an existing contract at the time of Barrick's involvement. The courts further found that Plaintiffs' contract with Crescent ended on August 26, 2004, the date Plaintiffs furnished notice to Defendants and that Plaintiffs presented no evidence that the relationship between Plaintiffs and Crescent continued beyond August of 2004. (*Id.* at 2-3)

Defendants argue that Plaintiffs are not entitled to the Liquidated Damages provision because it was Plaintiffs who breached the Agreements initially. Defendants claim that it was Plaintiff Fusion who breached the Motor Fuel Supply & Marketing Agreement at its inception by charging a price higher than the price provided in the Motor Fuel Supply & Marketing Agreement. The Motor Fuel Supply & Marketing Agreement provides that the prices shall be those of Sunoco Rack,

plus freight, plus one cent, subject to the dealer receiving 13,000 gallon loads. (Motor Fuel Supply & Marketing Agreement, ¶ 2) Plaintiffs admit in their brief that they charged a different price from the Motor Fuel Supply & Marketing Agreement. Plaintiffs argue that "whatever price was charged was based upon the price being faxed to the Defendant in the morning prior to any order being placed, and thus their acceptance of that price constitutes an amendment of the Agreement through performance." (Plaintiffs' Br. on Defendants' Counter Complaint, p. 13) During discovery in this case, Defendants discovered what the actual freight charge was and that based on this new information, Defendants prepared a spreadsheet analysis of the overages charged by Plaintiff Fusion, which is attached as Exhibit T to Defendants' Response to Plaintiffs' Motion for Summary Judgment on the Complaint. (El-Bathy Aff., ¶ 7)

As to Plaintiffs' Motion for Summary Judgment on the Counterclaim, Defendants reiterate their arguments above, claiming that Plaintiffs were the ones who initially breached the Agreements by failing to provide the 13,000 gallons of fuel ordered by Plaintiffs, by failing to charge the proper amount for the fuel as required under the Agreements, and by wrongfully terminating the Motor Fuel Supply & Marketing Agreement, in violation of the PMPA.

Congress enacted the PMPA to protect ***franchisees*** from arbitrary or discriminatory termination or nonrenewal of their franchises. *See Massey v. Exxon Corp.,* 942 F.2d 340, 342 (6th Cir. 1991). Congress designed the PMPA to allay three specific concerns: 1) that franchisee independence may be undermined by the use of actual or threatened termination or nonrenewal to compel compliance with franchisor marketing policies; 2) that gross disparity of bargaining power may result in franchise agreements that amount to contracts of adhesion; and 3) that termination or nonrenewal may disrupt the reasonable expectations of the parties that the franchise relationship will

14

be a continuing one. *Id.* The PMPA prohibits termination of a franchise agreement prior to the conclusion of the term or the expiration date of the agreement. 15 U.S.C. § 2802(a)(1). The PMPA further provides that prior to termination of any franchise or nonrenewal of any franchise relationship, the franchisor shall furnish notification of such termination or nonrenewal not less than 90 days prior to the date on which the termination takes effect, the notice must be in writing, by certified mail or personally delivered to the franchisee, and contains a statement of intention to terminate the franchise, together with the reasons and the date on which such termination takes effect. 15 U.S.C. § 2804(a)-(c).

In this case, there is no dispute that Plaintiffs sent a letter to Defendants dated August 26, 2004 indicating that the agreement was "terminated immediately pursuant to 15 U.S.C. § 2804(b) and the provisions of the Land Contract and the Motor Fuel Supply & Marketing Agreement." (Ex. Y, Plaintiffs' Joint Exhibits) Defendants argue that this notice failed to provide them with the required 90-day advance notification under the PMPA. Although the PMPA provides an exception to the 90-day notice requirement in circumstances where it would not be reasonable for the franchisor to furnish a 90-day notice, Defendants claim this is inapplicable to the case. Plaintiffs claim that as early as the inception of the relationship as early as January, February and March 2004, Plaintiffs had already determined that Defendants were in breach of the Agreement, yet Plaintiffs waited until August 2004 to issue the termination letter. Plaintiffs could have issued a 90-day notice earlier than August 2004. Plaintiffs have not shown that they gave any notice, verbal or otherwise, that the franchise would be terminated, other than the August 26, 2004 letter which stated that the agreement was "terminated immediately" and that Defendants were to vacate the premises by September 10, 2004. (Ex. Y, Plaintiffs' Joint Exhibits)

Defendants have shown that before their relationship with Plaintiffs, Defendants were operating the station successfully with Sunoco and, since the new relationship with Citgo, Defendants have operated the station with a profit. Defendants have addressed Plaintiffs' allegations of breaches as noted above, with factual support. The underlying claim in this case, as requested by Plaintiffs in their Complaint, is for the Court to declare that Plaintiffs are entitled to termination of the Agreements under the PMPA. Defendants have submitted sufficient facts to create a genuine issue of material fact that Plaintiffs are not entitled to the termination of the Agreements under the PMPA. Defendants submitted sufficient reasons with factual support that Plaintiffs may have initially breached the Agreements by failing to deliver the requested fuel and overcharging Defendants on the delivered fuel. Defendants have also submitted sufficient facts to show that Plaintiffs breached the PMPA in failing to give the appropriate 90-day notice required under the Act. Additionally, as noted above, Defendants have submitted sufficient facts to create a genuine issue of material fact that Defendants breached the Agreements.

Defendants further submitted sufficient evidence to preclude summary judgment on the claims alleged in the Counterclaim. Defendants submitted evidence to support their claim that Plaintiffs breached the Motor Fuel Supply & Marketing Agreement by over-charging prices for gasoline distribution, failing to deliver within 24 hours, over-charging Defendants by paying a Sunoco charge and gasoline sales tax and discontinuing gasoline distribution and not delivering what was ordered. As noted above, Defendants have also submitted sufficient evidence to show that Plaintiffs violated the PMPA by terminating the Franchise Agreement.

### III.  CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion for Summary Judgment and Motion to Compel Plaintiffs to Deliver Deed to Property to Defendant **(Docket No. 57, filed April 8, 2005)** is DENIED without prejudice. Defendants may amend their Counterclaim within fourteen (14) days from the entry of this Order. Count II of the Counterclaim, the Breach of Land Contract and Specific Performance claim, is DISMISSED based on Defendants' statement that the alleged breach has been cured.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment on the Complaint **(Docket No. 58, filed April 14, 2005)** is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment of Defendants' Counter-Complaint **(Docket No. 60, filed April 14, 2005)** is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Order for Leave to File Exhibits in Traditional Manner **(Docket No. 69, filed April 21, 2005)** is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Supplement Exhibit B of Defendants' Answer to Plaintiffs' Motion for Summary Judgment **(Docket No. 83, filed July 11, 2005)** is GRANTED.

IT IS FURTHER ORDERED that a Status Conference in this case be held on **Tuesday, May 30, 2006, 3:45 p.m.**

                                                                /s/ DENISE PAGE HOOD
                                                                DENISE PAGE HOOD
                                                                United States District Judge

DATED: March 30, 2006